FILED

13 FEB -8 PM 3:01

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY D. CARTER,<br><br>          Plaintiff,<br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>          Defendant. | CASE NO. 11cv1438-MMA (KSC)<br><br>**REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 16 & 20] |

   Plaintiff Wendy Carter brings this action under the Social Security Act ("SSA"), 42 U.S.C. § 405(g), seeking judicial review of defendant Social Security Administration Commissioner's final decision denying her claims for Disability Insurance Benefits ("DIB") and Disabled Widow's Benefits. This case was referred for a Report and Recommendation on the parties' Motions for Summary Judgment. [Doc. No. 3; *see* 28 U.S.C. § 636(b)(1)(B)] After considering the moving papers [Doc. Nos. 16, 20], the Administrative Record [Doc. No. 9], and the applicable law, the Court **RECOMMENDS** that plaintiff's Motion for Summary Judgment [Doc. No. 16] be **DENIED**, and that defendant's Cross Motion for Summary Judgment [Doc. No. 20] be **GRANTED**.

///
///

## I. PROCEDURAL HISTORY

On March 27, 2008, plaintiff filed an application for DIB under Title II of the SSA alleging disability due to Hepatitis C, cirrhosis, depression, anxiety, and skin problems. [Administrative Record (AR) at 50, 108-14] Plaintiff alleged the date of onset of her disability was December 2, 2006, and her date last insured was December 31, 2008. [AR at 11, 130] On April 2, 2008, plaintiff filed an application for Disabled Widow's Benefits. [AR at 51] Defendant denied both of plaintiff's applications at the initial and reconsideration levels. [AR at 54-58, 61-65] At plaintiff's request [AR at 66-67], Administrative Law Judge (ALJ) Howard K. Treblin held a hearing on July 9, 2010. [AR at 34-49] Plaintiff and her attorney, Thomas G. Roche, appeared at the hearing. [AR at 26-55] Based on the testimony and the documentary evidence, on October 25, 2010, the ALJ issued his decision, finding that plaintiff was not disabled as defined in the SSA. [AR at 8-24] Accordingly, the ALJ denied plaintiff's applications for DIB and Disabled Widow's Benefits [AR at 8-24], from which plaintiff filed an administrative appeal. The ALJ's finding that plaintiff was not disabled became the Commissioner's final decision on April 28, 2011, when the Appeals Council declined plaintiff's request for review. [AR at 1-5]

## II. RELEVANT FACTS

### A. Background

Plaintiff was born on November 18, 1954. [AR at 108] She completed high school, has an Associate of Arts degree, and is able to communicate in English. [AR at 38, 167] Plaintiff's past employment experience includes work as an antiques dealer, sales assistant, and waitress. [AR at 39-40, 163] In addition, plaintiff is a widow, previously married to Charles Braun, Jr. [AR at 158] Mr. Braun died on August 8, 2000 and she has not since remarried. [AR at 115] Plaintiff suffers from Hepatitis C, cirrhosis, depression, fatigue, weakness, anxiety, and skin problems. [AR at 40] Plaintiff claims these ailments render her disabled. [AR at 50, 108-14]

### B. Medical Evidence

#### 1. Eva M. Abbo, M.D. (2002 - 2007)

From July 2002 to March 2007, plaintiff was treated by Dr. Abbo for Hepatitis C, fatigue, and weakness. [AR at 281-90] Dr. Abbo's records indicate that plaintiff has a long-standing history

of chronic Hepatitis C, and has been treated with Lorazepam and Prozac. *Id.*

### 2. Denise L. Parnell, M.D., Primary Care Physician (2008 - 2010)

Beginning in February 2008, plaintiff visited Dr. Parnell for her primary care needs. [AR at 295-305, 363-77, 453-61, 481-512] Plaintiff presented to Dr. Parnell numerous times with a variety of medical problems, including: Hepatitis C, fatigue, weakness, anxiety, skin irritation, staph infections, lower abdominal bloating, malaise, and occasional constipation. *Id.* Dr. Parnell diagnosed plaintiff with Hepatitis C and chronic liver disease ("cirrhosis") and referred plaintiff to UCSD Medical Center for evaluation of her Hepatitis C and to Dr. Susan Kower for a psychiatric evaluation [AR at 363-77] While Dr. Parnell primarily treated plaintiff's Hepatitis C and cirrhosis, she also treated her chronic itching and neuropathic pain with narcotics. [AR at 512]

### 3. H. Susan Kower, M.D., Psychiatrist (2008 -2010)

On May 22, 2008, on referral from Dr. Parnell, Dr. Kower performed a psychiatric evaluation of plaintiff. [AR at 378-89] Plaintiff presented with anxiety, depression, agoraphobia, sleep problems, memory problems, and panic attacks. *Id.* Plaintiff reported a prior history of substance abuse, including: alcohol from age 16 (1970) to 1982; heroin at age 18; marijuana, mushrooms, LSD, and upper/downer pills from 17 to 20 years of age. *Id.* Dr. Kower found plaintiff to have a blunted affect, an anxious mood, poor recent memory, and an inability to concentrate. *Id.* Dr. Kower diagnosed plaintiff with panic disorder and major depression. *Id.*

Plaintiff presented to Dr. Kower at least 10 additional times from June 2008 to June 2010. [AR at 378-89, 513-52] Over the course of those visits, Dr. Kower's diagnosis (panic disorder and major depression) remained, and she prescribed Cymbalta, Lorazepam, Prozac, and Zoloft. *Id.* Further, plaintiff was consistently found to have a Global Assessment of Function (GAF) score of 49. *Id.* According to the Diagnostic and Statistical Manual of Mental Disorders (1994, 4th ed.), a GAF score of 49 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. On June 30, 2010, Dr. Kower completed a form entitled "Medical Opinion Re: Ability to do Work Related Activities." [AR at 513-14] On that form, Dr. Kower indicated that plaintiff was "unable to meet the competitive standards" in numerous categories related to work place demands and was easily overwhelmed, fatigued, depressed, and anxious. *Id.*

**4. Douglas R. Dolnak, D.O., Psychiatrist and State Consultative Examiner (2008)**

On June 17, 2008, Dr. Dolnak performed a complete psychiatric evaluation of plaintiff. [AR at 306-315] Plaintiff presented with complaints of fatigue, weakness, poor sleep, constipation, and burning and itchy skin related to her Hepatitis C. [AR at 308] Plaintiff reported feeling frustrated and helpless regarding her health, finances, future, and family. *Id.* Further, plaintiff claimed difficulty with attention, memory, and concentration. [AR at 309] Regarding her long history of panic disorder, plaintiff claimed significant panic attacks, feelings of impending doom, racing heart, sweating, and tension. *Id.* Dr. Dolnak found plaintiff to be alert and oriented, mildly anxious, containing a clear thought process, cooperative, and appearing genuine and truthful with no evidence of symptom exaggeration. [AR at 311-12] Dr. Dolnak diagnosed plaintiff with panic disorder, mild severity; major depressive disorder, mild severity; alcohol dependence, in full remission; and heroin abuse, in full remission. [AR at 312] Further, Dr. Dolnak assigned plaintiff a GAF score of 65. *Id.*

**5. UCSD Medical Center (1986 - 1991)(2008 - 2009)**

Plaintiff has medical records from the UCSD Medical Center dating back to 1986. [AR at 237-80, 410-44, 462-65] With respect to plaintiff's DBI-related claims, UCSD Medical Center treated plaintiff's Hepatitis C and liver disease in 2008 and 2009. UCSD reported that plaintiff was diagnosed with Hepatitis C in 1991, but was never properly treated and eventually felt fatigue and pruritus (itchy sensation on skin). [AR 410-44, 462-65] In November 2008, plaintiff presented with significant itching and bumps on her arms and abdomen, significant fatigue, and a self-reported history of depression. [AR at 410-44] Progress notes from June 30, 2009 indicate that plaintiff's liver biopsy on June 5, 2008 showed chronic Hepatitis C, "mild to moderate lobular inflammatory activity, portal fibrosis, without definite bridging or cirrhosis." [AR at 414] Further, the notes indicate plaintiff had "clinically compensated cirrhosis w[ith] low platelet." *Id.*

### III. ALJ HEARING AND DECISION

#### A. Plaintiff's Testimony

At the July 9, 2010 hearing, plaintiff stated that, due to her Hepatitis C and liver condition, she suffers from numerous ailments, including: difficulty sleeping, weakness, fatigue, depression,

body pain, itching and stinging of skin, and general discomfort. [AR at 40] Plaintiff believes she has liver cancer and that she has "between six months and two years to live." *Id.* Regarding treatment for her Hepatitis C and liver, plaintiff claims she is non-responsive to the latest treatment and "there is no other treatment" available. [AR at 41] As a result of her conditions, plaintiff reports having trouble thinking, concentrating, maintaining attention, remembering, and sometimes getting along with others. [AR at 41-42] With respect to her skin, as a result of her liver problems, plaintiff reports lesions, itching, and stinging. [AR at 44] A typical day for plaintiff involves sitting, lying, reclining, reading, light housework, watering plants, listening to music, and playing games on the computer. [AR at 43, 47] With the exception of 2 hours, plaintiff estimates she spends all day off of her feet. [AR at 43] In a typical week, plaintiff reports having more bad days than good.

With food stamps and roughly $360 per month of state aid as her only sources of income, plaintiff lives in "an exceedingly small studio" with her daughter. [AR at 45] Plaintiff reports having no savings and that she declared bankruptcy in 2007. [AR at 46] She goes grocery shopping 2 to 3 times a week and cooks roughly twice a week. *Id.* Prior to exiting the work force in 2006, plaintiff worked as an antiques dealer and a waitress. [AR at 40]

**B. The Written ALJ Decision**

On October 25, 2010, the ALJ issued a written opinion denying plaintiff's claims for DBI and Disabled Widow's Benefits, finding that plaintiff was not under a disability within the meaning of the SSA for the relevant time periods. [AR at 8-24] With respect to the Widow's Benefits, the ALJ found that for plaintiff to be entitled to such benefits, she must establish that she had a disability which began before the end of the statutorily prescribed period of time. [AR at 8] In plaintiff's case, considering her age and the circumstances of her late-husband's August 8, 2000 death, the period for Disabled Widow's Benefits ended on July 31, 2007. [AR 8-11] The ALJ found that plaintiff was not disabled from the time of her late-husband's death to July 31, 2007, as there was no continuous 12-month period where she had not engaged in "substantial gainful activity," which is defined as monetary gains of $900 (or more) per month. [AR at 11]

Regarding the DIB claim, the ALJ conducted a full, five-step analysis in finding that

1  plaintiff was not entitled to DIB benefits. [AR at 8-24] First, while finding plaintiff engaged in
2  gainful activity in 2007, the ALJ concluded that plaintiff had not otherwise engaged in substantial
3  gainful activity since the date of the alleged onset of disability, December 2, 2006. [AR at 11]
4  Further, the ALJ found December 31, 2008 to be the date plaintiff was last insured. *Id.* At step
5  two, the ALJ found plaintiff suffered from the following "severe" impairments, as defined in the
6  Regulations: Hepatitis C, cirrhosis, depression, anxiety, and skin problems. [AR at 11, citing §
7  404.1520©] At step three, plaintiff was found to have no impairment, or combination thereof, that
8  met or equaled an impairment listed under 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.
9  [AR at 13] In assessing plaintiff's residual functional capacity ("RFC") at step four, plaintiff was
10 deemed capable of performing a full-range of light work as defined in 20 C.F.R. § 404.1567(b).
11 [AR at 15] While plaintiff was found to be incapable of performing her past relevant work
12 experience, at step five, the ALJ concluded that, given plaintiff's age, education, work experience
13 and RFC, there "were jobs that existed in significant numbers in the national economy that [she]
14 could have performed." [AR at 23, citing 20 C.F.R. §§ 404.1569, 404.1569(a)]

15  While the ALJ found that plaintiff's above-mentioned impairments could reasonably be
16 expected to cause the alleged symptoms, he found plaintiff's statements concerning "the intensity,
17 persistence and limiting effects of these symptoms" to not be credible. [AR at 16] The ALJ noted
18 that "the record does not contain evidence which shows that the claimant is functionally unable to
19 work." *Id.*

## IV. LEGAL STANDARDS

### A. Evaluating Disability Widow's Benefits

When a person receiving Social Security Disability benefits dies, the surviving spouse might qualify for benefits as a survivor, known as Widow/Widower Benefits. 20 C.F.R. § 404.335. In this case, given plaintiff's age and circumstances at the time of her late-husband's death in 2000, she qualifies for Widow's Benefits only if she can prove the following: she is the widow of a deceased worker who previously qualified for Social Security Benefits, she attained the age of 50, she has not re-married, and she has a disability that began before the end of the statutorily prescribed period. 20 C.F.R. § 404.335(c)(ii). The prescribed period ends the month

prior to the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death, or 7 years after the widow was last entitled to survivor's benefits, whichever is later. 20 C.F.R. § 404.335(c)(1).

### B. Evaluating Social Security Disability Claims (DBI)

To qualify for DBI under the SSA, plaintiff must show that she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months or cause death. 42 U.S.C. § 423(d). The Social Security Regulations set out a five-step process for determining whether a person is disabled within the meaning of the SSA. *See* 20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). If a party is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps. 20 C.F.R. § 416.920.

First, the ALJ must determine whether the applicant engaged in substantial gainful activity during the relevant time frame. 20 C.F.R. § 404.1520(a)(4)(I). If not, then the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of the regulations. *Id.* If the impairment is severe, the ALJ must then determine whether it meets or equals one of the "Listing of Impairments" in the Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, the ALJ must then determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. *Id.* If the impairment does not meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v).

While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

///

### 1. Substantial Evidence

The SSA provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Id.*; *Batson*, 359 F.3d at 1193. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). When the evidence is susceptible to more than one reasonable interpretation, an agency's otherwise reasonable decision must be upheld. *Batson*, 259 F.3d at 1193. Where, as here, the Appeals Council denies a request for review, the ALJ's decision becomes the final agency decision that the court reviews. *Id.* at 1193 n.1.

### 2. Use of the Medical-Vocational Guidelines (Grids) in Determining Disability

As discussed above, at step-five of the sequential evaluation process, the burden shifts to the Commissioner to show that, considering a claimant's age, education, work experience, and RFC ("the four factors"), said claimant can adjust to other work available in the national economy. *See* 20 C.F.R. § 404.1520. To assist in the step-five determination, the Social Security Administration established the Medical–Vocational Guidelines ("the grids"), which "consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983). When the grids match the claimant's qualifications, "the guidelines direct a conclusion as to whether work exists that the claimant could perform." *Id.* at 462. When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, *see* Soc. Sec. Ruling 83–14, 1983 WL 31254 (S.S.A.), or (2) rely on a vocational expert when the claimant has significant non-exertional[1] limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

---

[1] Exertional limitations impact an individual's ability to meet the physical strength demands of a job, such as sitting, standing, walking, lifting, carrying, pushing and pulling. *See* 20 C.F.R. § 404.1569(a). Further, strength demands of a job are typically classified as sedentary, light, medium, heavy, and very heavy. *Id.* Non-exertional limitations are non-physical limitations on a claimant's ability to due the job. These are typically mental or emotional limitations. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Cir. 2001); *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988).

## V. DISCUSSION

Plaintiff argues there was no substantial evidence to support the ALJ's findings that she was not disabled for the pertinent time periods. Specifically, plaintiff contends that the ALJ's use of the Medical–Vocational Guidelines was improper and that testimony from a vocational expert was necessary. The Court disagrees.

The parties do not dispute the ALJ's determination at steps one through four. Instead, the dispute centers around the ALJ's step-five determination. Plaintiff argues that the ALJ erred at step five by using the grids, and not the vocational expert, to determine what alternative work he believed plaintiff could perform. Plaintiff asserts that because her depression and anxiety constitute non-exertional limitations, the ALJ was required, in accordance with Ninth Circuit case law, to seek the testimony of a vocational expert. Plaintiff argues that anytime a claimant has both exertional and nonexertional limitations, the grids are inapplicable and the ALJ must hear testimony from a vocational expert. [Doc. No. 16, Exh. 1, p. 6 citing *Moore v. Apfel*, 216, F.3d 864 (9th Cir. 2000)] This is incorrect. "The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids 'provide for the evaluation of claimants asserting both exertional and non-exertional limitations.'" *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (citing *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) ("the fact that a non-extertional limitation is alleged does not automatically preclude application of the grids."). The grids are inapplicable and a vocational expert is necessary only "[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

Plaintiff failed to present any arguments regarding the severity of her non-exertional limitations. Instead, she argues that their existence alone makes the use of the grids inappropriate. While depression has been found to be a non-exertional disorder, mild or moderate depression is not a "sufficiently severe" non-exertional limitation that will preclude an ALJ's reliance on the grids and require the assistance of a vocational expert. *Hoopai*, 499 F.3d at 1076-77. In this case

we affirm the ALJ's decision and hold that plaintiff's depression was not a sufficiently severe non-exertional limitation that required the assistance of a vocational expert. Substantial evidence in the form of psychological evaluations by Dr. Douglas Dolnak and Dr. D. Gross [AR at 324-337] supports the ALJ's conclusion that plaintiff's depression and anxiety were not sufficiently severe so as to significantly impact her ability to work beyond the exertional limitations. Dr. Dolnak and Dr. Gross diagnosed plaintiff with mild forms of depression and anxiety. Although Dr. Kower opined that plaintiff is "unable to meet the competitive standards" in numerous categories related to work place demands, Dr. Gross performed a mental residual functional capacity assessment of plaintiff which revealed otherwise. Of the 20 categories of possible impairments in understanding and memory, Dr. Gross concluded that plaintiff was "not significantly limited" in 7 of the categories and only "moderately limited" in the remaining 13. [AR at 335-337] This is consistent with the ALJ's finding that plaintiff had the RFC to perform light work, limited to simple, repetitive tasks in a non-public work setting.

The Ninth Circuit has not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitations. Accordingly, substantial evidence supports the ALJ's conclusion that plaintiff's depression and anxiety were not sufficiently severe non-exertional limitations that prohibited the ALJ's reliance on the grids without the assistance of a vocational expert.

With respect the ALJ's denial of plaintiff's April 2, 2008 application for Disability Widow's Benefits, in her Motion for Summary Judgment, plaintiff does not formally raise this issue, or contest the ALJ's finding. Considering plaintiff's age at the time of her late-husband's August 2000 death, the ALJ correctly found that the statutorily prescribed period for Widow's Benefits ended on July 31, 2007. [AR at 11] The ALJ also correctly found that there was no continuous 12-month period in the pertinent timeline where plaintiff had not engaged in substantial gainful activity, as defined in the Regulations. *Id.* Accordingly, and because plaintiff does not contest these findings, the ALJ's denial of plaintiff's Disability Widow's Benefits was proper.

///

///

## CONCLUSION

Based on the preceding discussion, this Court concludes that the ALJ's denial of benefits was supported by substantial evidence and was free of legal error. Therefore, the Court **RECOMMENDS** that plaintiff's Motion for Summary Judgment [Doc. No. 16] be **DENIED** and that defendant's Cross Motion for Summary Judgment [Doc. No. 20] be **GRANTED**.

This Report and Recommendation ("R&R") is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties **within 14 days of being served with a copy of this R&R**. The document should be captioned "Objections to Report and Recommendation. Failure to file objections within the specified time may affect the scope of review on appeal. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

Date: February ___8___, 2013

KAREN S. CRAWFORD
United States Magistrate Judge